IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| KATHLEEN WIRE | § | |
| | § | |
| VS. | § | CA No. _____ |
| | § | |
| THE LINCOLN NATIONAL | § | |
| LIFE INSURANCE COMPANY and | § | |
| GROUP LONG TERM DISABILITY | § | |
| INSURANCE FOR EMPLOYEES OF | § | |
| HARDEN HEALTHCARE, INC. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

KATHLEEN WIRE, Plaintiff, files this Original Complaint asserting causes of action in law and equity for relief against The Lincoln National Life Insurance Company and Group Long Term Disability Insurance for Employees of Harden Healthcare, Inc., Defendants.

**I.
PARTIES**

1. Plaintiff, Kathleen Wire ("Peel"), is a resident citizen of Rusk, Texas.

2. Defendant, The Lincoln National Life Insurance Company ("Lincoln National"), is a domestic or foreign company licensed to do business and doing business in the state of Texas. It can be served with process by serving its registered agent, Corporation Service Company, 211 East 7th St., Suite 620, Austin, TX 78701-3218, or wherever it may be found.

3. Group Long Term Disability Insurance for Employees of Harden Healthcare, Inc.

("Plan") is an employee welfare benefit plan of Harden Healthcare, Inc. ("Harden"). Harden is the Plan Sponsor and Plan Administrator. The Plan may be served by serving Harden Healthcare, Inc. 3307 Northland Dr., Suite 300, Austin, TX 78731, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

4. This action against Lincoln National and the Plan arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq*. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

5. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendants maintain business activity in and may be found in this district.

6. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

7. Kathleen Wire was hired by Harden in 1996 as a payroll clerk. As a full time employee, she was enrolled in Harden's employee welfare benefit Plan that included benefits for long term disability (LTD).

8. Harden's LTD Plan was part of the company's Group Insurance Policy issued by Lincoln National. The LTD Policy Number was 00001011029300000 (the "Policy"). The Policy provided income protection if the covered employee became disabled as

a result of injury or sickness. Wire was an eligible employee.

9. Lincoln National was the Insurer and Claims Administrator for the Plan.

10. In 2011, Ms. Wire began to develop complex regional pain syndrome. She filed for LTD benefits.

11. Lincoln National approved Ms. Wire's LTD claim and approved her benefits beginning on August 17, 2011.

12. In August 2012, Dr. Schocket, Ms. Wire's pain management physician, advised Lincoln National that Ms. Wire could not stand, walk, or sit long enough to do sedentary work.

13. In February 2013, Dr. Randall Rodgers, a pain management physician, began prescribing Ms. Wire Oxycodone for her pain. Dr. Rodgers noted that physical therapy would not cure her problems and that her disability was permanent.

14. Lincoln National's policy defined total disability as, among other things, a condition in which the beneficiary is "unable to perform each of the main duties of his or her own occupation" during the first 24 months of disability. This provision is commonly known as "own occupation" disability. After the first 24 months of disability, total disability is defined as being "unable to perform each of the main duties of any gainful occupation". This is commonly known as "any occupation" disability.

15. On July 30, 2013, Lincoln National terminated Ms. Wire's LTD claim. It concluded that there was no evidence to support any functional limitations that would prevent her from sedentary work. It also concluded that her pain was "well managed" by pain medication.

16. In denying Ms. Wire's claim, Lincoln National relied on a medical record review by one of its employees, Donna Willaert, R.N. Ms. Willaert concluded that the medical evidence was "not compelling for functional limitations" that would prevent Ms. Wire from sedentary work.

17. However, Ms. Willaert lacked the training, education, or experience to make any of these conclusions. She is a registered nurse licensed in the State of Georgia. She does not have a nursing license in Texas. She is not competent to opine on medical causation. She was prohibited by law from making precisely the kinds of medical diagnoses that she made and upon which Lincoln National relied in denying the claim. Lincoln National knew or should have known of this legal infirmity but nevertheless persisted in its reliance on Wilaert's unqualified opinion.

18. Ms. Wire promptly appealed Lincoln National's termination of her claim on January 7, 2014. She submitted additional medical records in March 2014.

19. On May 5, 2014, Lincoln National denied Ms. Wire's appeal. In doing so, Lincoln National repeated its contention that there was no evidence to support any functional limitations that would prevent Ms. Wire from sedentary work.

20. On October 31, 2014, Mr. Wire submitted a second appeal. Among other things, she explained that her medical records evidenced her disability, that Lincoln National ignored the Social Security Administration's disability determination, and that Lincoln National wrongfully concluded that there was no "objective evidence" of her disability.

21. On December 17, 1014, Ms. Wire underwent a nerve conduction test. Dr. Preston

Harrison concluded that the results were consistent with moderate/mixed axonal/demylinating neuropathy. He also found that the findings would explain some of Ms. Wire's lack of body positional awareness and gait disturbance.

22. On December 24, 2014, Ms. Wire underwent an MRI of her cervical spine. The MRI revealed severe left sided neural foraminal stenosis at the C7-T1 joint.

23. On January 14, 2015, Lincoln National denied Ms. Wire's second appeal.

24. On January 23, 2015, Dr. Sujata White diagnosed Ms. Wire with right lumbar disc radiculopathy.

25. Two MRIs of the spine taken on February 3, 2015 revealed broad based disc protrusion at the L3-L4 joint, creating almost moderate to severe spinal stenosis. Spinal stenosis was also found at the L4-L5 joint.

26. A nerve conduction study done on September 25, 2015 revealed that Ms. Wire suffered from at least moderate sensory and motor carpal tunnel syndrome.

27. On October 8, 2015, Ms. Wire submitted to Lincoln National additional medical records from Dr. White and Dr. Rodgers that supported her LTD claim. She requested that Lincoln National review those records and include them as part of her claim file.

28. On October 22, 2015, Lincoln National advised that Ms. Wire's LTD claim "is closed and will remain closed". It confirmed that although the additional medical records were part of the claim file, the evidence would not be reviewed.

29. Lincoln National's failure to review or consider the supplemental documents provided by Ms. Wire on October 8, 2015 violated the Fifth Circuit's holding in *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287 (5th Cir. 1999). It also violated

Lincoln National's fiduciary duty to Ms. Wire.

30. Having exhausted her administrative remedies, Kathleen Wire brings this action to recover the LTD benefits promised in the Policy and the Plan.

## IV.
## CLAIMS & CAUSE OF ACTION

31. Lincoln National is an insurer and provided LTD coverage to Ms. Wire in accordance with the terms of the Policy. That coverage included LTD benefits arising out of her disability.

32. The Policy, as part of the Group Long Term Disability Insurance for Employees of Harden Healthcare, Inc. Plan, is governed by ERISA. 29 U.S.C. §1001, *et. seq*. Lincoln National is the Claims Administrator and a named fiduciary under the Plan.

33. As a Plan fiduciary, Lincoln National is obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. It is also obligated as a fiduciary to conduct its investigation of a claim in a fair, objective and evenhanded manner.

34. Lincoln National's adjustment or "adjudication" of the Wire claim was instead biased and outcome oriented. This was in part reflected by its repeated denial of the Wire claim, even after being presented with evidence of her disability. It was also reflected in Lincoln National's unreasonable reliance on reviewers who lacked the training, education, and experience to properly review her claim.

35. Lincoln National's interpretation of the Policy and the terms of the Policy was not legally correct. It was also contrary to a plain reading of the Policy language.

36. Lincoln National's interpretation of the Policy and Policy language was contrary to

that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Policy terms. Alternatively, the Policy language upon which Lincoln National based its denial decision was ambiguous. The ambiguous nature of those terms require those terms be construed against Lincoln National and in favor of coverage for the beneficiary.

37. Lincoln National's denial was made without substantial supporting evidence. Its decision to deny the Wire claim was instead based upon rank speculation and guesswork. Lincoln National's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

38. On information and belief, Lincoln National's denial of the Wire claim was not the result of a honest, fair, or objective factual investigation. It was instead motivated by Lincoln National's desire for financial gain evidenced by policies, procedures, and practices to profit from the delay in payment or denial of claims. It may also be found in various incentive programs for claims personnel and in various management directives. Its financial gain is also reflected in the high ROE Lincoln National gains from retained benefit funds.

39. At all material times, Lincoln National was acting on behalf of the Plan and in its own capacity as the insurer and Claims Administrator.

40. Lincoln National's denial of the Wire claim breached the terms of the Policy and the Plan. Its breach was in violation of 29 U.S.C. §1132(a)(1), entitling Wire to the LTD Policy to which she is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Kathleen Wire now sues. Ms. Wire is entitled to LTD benefits from July 30, 2013 to March 25, 2015, when she turned 65.

## V.
## STANDARD OF REVIEW

41. The default standard of review for denial of a benefit claim is *de novo*. Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

42. The Policy may contain a discretionary clause or language Lincoln National may construe as affording it discretion to determine eligibility for benefits, to interpret the terms of the Policy, and determine the facts. Lincoln National's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

43. If discretion applies, the Court should afford Lincoln National less deference in light of its financial conflict of interest. Lincoln National's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of the Wire benefit claim and as the potential payor of that claim.

44. Lincoln National's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. Lincoln National's financial conflict is also revealed in the high ROE gained from the delay in payment or denial of claims.

45. Each of these grounds, on information and belief, was a motive to deny the Wire claim, along with the delay in payment or denial of claims of other Lincoln National policyholders and claimants.

46. Lincoln National, in light of its financial conflict, should be accorded little or no discretion in its claims decision.

47. Alternatively, the standard of review of this claim should be *de novo,* affording

Lincoln National no discretion in its interpretation of the terms of the Policy and Plan, nor in its factual determinations.

48. The Policy was delivered in Texas. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. Admin. Code §3.1202. Accordingly, review of the Wire claim and Lincoln National's claims handling conduct both in its interpretation of terms of the Policy and the Plan, and in its determination of the facts, should be *de novo*.

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

49. Wire requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

50. Lincoln National's policy does not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Insurance Code. Wire thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to her, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

51. Wire seeks an award of her reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. She is entitled to recover those fees, together with her costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## **PRAYER**

52. Kathleen Wire, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in her favor and against Defendants The Lincoln National Life Insurance Company and Group Long Term Disability Insurance for Employees of Harden Healthcare, Inc., and issue judgment against each Defendant as follows:

   a. Pay to Ms. Wire all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

   b. Pay all reasonable attorney's fees incurred and to be incurred by Ms. Wire in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter;

   c. All such other relief, whether at law or in equity, to which Ms. Wire may show herself justly entitled.

Respectfully submitted,

By: __/s/_____
James C. Plummer, TBA #16075700
Federal I.D. No. 3692
jplummer@plummerlawyers.com
Amar Raval, TBA # 24046682
S.D. I.D. No 619209
araval@plummerlawyers.com
**PLUMMER | RAVAL**
4203 Montrose Boulevard, Suite 270
Houston, Texas 77006
(713) 522-2887
(713) 522-3605 (Fax)

                                                      ATTORNEYS FOR PLAINTIFF